# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lemuel Harold Palmer, V, | No. CV-24-00303-PHX-DWL (DMF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ryan Thornell, et al., | |
| Respondents. | |

**TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT JUDGE:**

This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure. (Doc. 5 at 4)[1] On February 2, 2024,[2] Petitioner Lemuel Harold Palmer, V ("Petitioner"), who is confined in the Red Rock Correctional Center in Eloy, Arizona, filed a *pro se*

---

[1] Citation to the record indicates documents as displayed in the official Court electronic document filing system maintained by the District of Arizona under Case No. CV-24-00303-PHX-DWL (DMF).

[2] The Petition was docketed by the Clerk of Court on February 13, 2024. (Doc. 1) The Petition was signed by Petitioner on February 2, 2024. (Doc. 1 at 11) This Report and Recommendation uses February 2, 2024, as the operative filing date of the Petition. *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) ("A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing."); *Melville v. Shinn*, 68 F.4th 1154, 1159 (9th Cir. 2023) (affirming that the prison mailbox rule "applies to pro se federal habeas petitions" on the date a petitioner signs, dates, and attests the petition was placed in the prison mailing system); *see also* Rule 3, Rules Governing Section 2254 Cases (petition is timely if deposited in prison mailing system on or before last day for filing, which may be shown by "declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement").

Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Petition"). (Doc. 1) On February 28, 2024, the Court ordered Respondents to answer the Petition. (Doc. 5 at 3-4) On April 23, 2024, Respondents filed their Limited Answer to the Petition. (Doc. 10) Petitioner did not file a reply, and the time to do so has expired.

For the reasons set forth below, it is recommended that these proceedings be dismissed with prejudice, that the Clerk of Court be directed to terminate this matter, and that a certificate of appealability be denied.

## I. BACKGROUND

### A. Charges, Convictions, and Sentences

In Maricopa County Superior Court case number CR2016-006089-001, a grand jury indicted Petitioner with two crimes: one count of fraudulent schemes and artifices, a class 2 felony (count 1), and one count of theft, a class 3 felony (count 2). (Doc. 10-1 at 4-5) During the trial court proceedings both before and after trial, Petitioner challenged the prosecution based on subject matter jurisdiction. (*Id.* at 7-23, 25-26, 51-54, 63-64; Doc. 10-2 at 76, 228-229, 231) In its memorandum decision affirming Petitioner's convictions and sentences, the Arizona Court of Appeals summarized the events leading to the charges against Petitioner and the trial court proceedings through sentencing:

> Between January 2013 and September 2014, [Petitioner] received medical care from the Department of Veteran's Affairs ("V.A.") at least 74 times. The V.A. provides reimbursement to eligible veterans for travel expenses from their place of departure to the V.A. Medical Center in Phoenix. To receive reimbursement, a veteran must provide their place of departure to the V.A. Travel Office each time they apply for reimbursement. The V.A. then uses Google Maps to measure the veteran's travel distance. [Petitioner] provided the V.A. with multiple departure addresses, including two addresses in Parker, Arizona, and received $6,829.97 in mileage reimbursements.
>
> [Petitioner] was on probation during this time and had provided different addresses, in Phoenix and Tempe, to the Maricopa County Adult Probation Department ("Probation Department"). The Probation Department visited [Petitioner] to verify the Phoenix addresses. [Petitioner] never provided the Probation Department an address in Parker.
>
> A V.A. criminal investigator ("Investigator") learned that [Petitioner] did not own the residence at the first address in Parker, and a Google search revealed that the second address did not exist. The true owner of the first residence

testified at trial that he did not know [Petitioner] and never gave him permission to use the property in Parker. The Investigator did not visit either address.

The State charged [Petitioner] with fraudulent schemes and artifices, a class 2 felony, and theft, a class 3 felony.

At the final pretrial conference, the superior court ruled that the State could impeach [Petitioner] with his two prior felony convictions, but only if he testified. *See* Ariz. R. Evid. 609. [Petitioner] did not testify. Prior to trial, the State said it intended to call [Petitioner's] probation officer to testify about [Petitioner's] residences during the relevant period. [Petitioner] objected. The court overruled [Petitioner's] objection, citing its earlier order that the State cannot introduce testimony that [Petitioner] was on probation, and directing that the witness only testify he was an employee of Maricopa County.

[Petitioner] represented himself at trial with advisory counsel. The probation officer testified without reference to [Petitioner's] probation status. The State then called the Investigator. On cross-examination, [Petitioner] asked the Investigator about communications between the Investigator and probation officer. The court immediately called a bench conference, warning [Petitioner] that his "very broad question" could lead "into the probation issue." [Petitioner] continued his cross-examination on other subjects. [Petitioner] later asked the Investigator about his investigative report, which was marked as an exhibit but ultimately not offered into evidence. The report referenced an F.B.I. record that was neither attached nor disclosed to [Petitioner]. The following exchange occurred:

> [Petitioner]: In here – well, you stated that I had an extensive F.B.I. record. I don't recall ever having an extensive F.B.I. record. Could you please tell me what that is?

> Witness: Okay. So the F.B.I. maintains all information, called N.C.I.C., National Criminal Information Center, I want to say. Anyone's criminal information is stored there. So whether you were 17, lived in Oklahoma, then 18 you moved to Nebraska, every crime that you have ever committed is there. So for you, sir, your crimes that you committed in the United States Army is present. The crimes you committed locally here in Maricopa County are present. It also stated that you were on probation, and that is why I was able to find [the probation officer].

> [Petitioner]: Objection, Your Honor.

The court allowed the testimony as a "sufficient answer," describing it as "an indirect response," although the State claims this is a transcription error and should read: "This is in direct response to a question." The trial and sentencing transcripts support the State's assertion. But nothing in our record indicates the State sought to correct the record. *See* Ariz. R. Crim. P. 31.8(g)(2) (a dispute over the accuracy of the record "must be submitted to and settled by the superior court.")

[Petitioner] did not move for a mistrial. The court did not offer a limiting instruction and [Petitioner] did not request one. Before closing arguments, the court directed the State not to refer to the Investigator's testimony about

> [Petitioner's] criminal history, acknowledging that the testimony was "certainly prejudicial" and "did not help [Petitioner's] case." The State did not mention the Investigator's testimony in closing argument.
>
> The jury convicted [Petitioner] as charged. [Petitioner] filed multiple post-judgment motions, including a motion for a new trial based on the Investigator's prejudicial testimony. The superior court later denied the new trial motion, telling [Petitioner] that the Investigator "responded directly to your question…It's what we call opening the door and you asked him a question and he answered it." The court sentenced [Petitioner] to concurrent terms of 15.75 years imprisonment for fraud and 11.25 years for theft.

(Doc. 10-1 at 170-72)[3] Petitioner received 189 days of presentence incarceration credit for each count. (*Id*. at 67)

## B. Petitioner's Direct Appeal

On August 28, 2018, Petitioner, acting *pro se*, timely appealed his convictions and sentences. (*Id*. at 72-76) On May 23, 2019, through appointed counsel Jesse Finn Turner ("appellate counsel"), Petitioner filed an opening brief. (*Id*. at 95-127, 189) In the Arizona Court of Appeals, Petitioner raised one issue: that the trial court denied Petitioner relief regarding prejudicial witness testimony and erred in finding that the witness testimony was invited by Petitioner. (*Id*. at 99) On June 3, 2019, Petitioner, through appellate counsel, moved to suspend his direct appeal during the pendency of Petitioner's PCR proceedings. (*Id*. at 89-90) On June 7, 2019, the Arizona Court of Appeals suspended Petitioner's direct appeal and ordered that Petitioner's appeal be reinstated on August 7, 2019, unless Petitioner filed a notice of reinstatement of appeal, a motion to dismiss the appeal, a motion to continue the suspension, or a motion for rehearing. (*Id*. at 92-93) Following reinstatement of Petitioner's direct appeal, on December 16, 2019, the state filed a response brief (*Id*. at 129-49). Thereafter, Petitioner filed a reply (*Id*. at 151-67).

On October 1, 2020, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences, finding that the trial court had not abused its discretion in denying Petitioner's motion for a new trial based on witness testimony. (*Id*. at 169-75) The court of

---

[3] The appellate court's stated facts are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam) ("In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct."); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

appeals stated:

> We find no abuse of discretion on this record. Earlier in his cross-examination of the Investigator, the court warned [Petitioner] that his "very broad questions" might lead "into the probation issue." [Petitioner] initially listened to the court's advise but then returned to his broad questions—stating that he "[did not] recall ever having an extensive F.B.I. record" and asking the Investigator to "please tell me what that is?" Although [Petitioner] did not intend to elicit the prejudicial testimony, the Investigator's answer was responsive to [Petitioner's] broad question. *See State v. Stuard*, 176 Ariz. 589, 601 (1993) ("The broad question posed to [the witness] specifically called for the response now challenged."); *State v. Lawrence*, 123 Ariz. 301, 304-05 (1979) (holding that defense counsel's open-ended question on cross-examination had invited error); *Wilson*, 185 Ariz. at 259. That the Investigator provided a fulsome response does not render it non-responsive. As suggested by its name, the doctrine applies to *invited* responses, not merely to those responses *required* by whatever subjective intent existed in the mind of an inartful questioner. *See State v. Escalante*, 245 Ariz. 135, 145 ¶ 38 (2018) ("[I]f defense counsel invited trial error, *strategically or carelessly*, the defendant cannot obtain appellate relief ….") (emphasis added).
>
> We recognize that [Petitioner] was self-represented. But the court had informed [Petitioner] before trial that he would be held to the same standards and rules of procedure as attorneys and even warned [Petitioner] earlier in his cross-examination of the Investigator about asking broad questions. [Petitioner] had ample warning that broad or open questions might lead him into dangerous territory. *See State v. Parker*, 22 Ariz. App. 111, 114-15 (1974) ("The defendant, even though representing himself, cannot complain of matters that crept into the case through his own misconduct."). The superior court did not abuse its discretion by denying [Petitioner's] request for a new trial.

(*Id*. at 173)

On October 30, 2020, Petitioner's appellate counsel filed a petition for review in the Arizona Supreme Court. (*Id*. at 191-204) The petition for review argued that the court of appeals erred in finding prejudicial witness testimony "to be responsive to [Petitioner's] questioning" and the trial court abused its discretion in denying Petitioner's motion for a new trial. (*Id*. at 193) The state filed a response. (*Id*. at 206-18) On July 30, 2021, the Arizona Supreme Court denied the petition for review. (*Id*. at 220) On August 24, 2021, the court of appeals issued the mandate. (*Id*. at 177-85)

## C. First Post-Conviction Relief ("PCR") Proceedings

On December 28, 2018,[4] Petitioner filed a *pro se* PCR notice ("first PCR notice")

---

[4] The prison mailbox rule applies to Petitioner's PCR notice and PCR petition. *Melville*, 68 F.4th at 1159 ("We assume that [Melville] 'turned his petition over to prison authorities on the same day he signed it and apply the mailbox rule.' *Butler v. Long*, 752 F.3d 1177, 1178

- 5 -

in the superior court. (*Id*. at 224-28) On April 15, 2019, Petitioner filed a *pro se* PCR petition ("first PCR petition"). (*Id*. at 230-269) In his first PCR petition, Petitioner argued that the state lacked subject matter jurisdiction; insufficient evidence supported Petitioner's convictions; the indictment against Petitioner was insufficient or defective; Petitioner was denied his Fourteenth Amendment due process and Sixth Amendment rights; "no consequences attached to criminal statutes A.R.S. 13-2310/13-1801 § E" such that statutes were vague; sentencing factors were "manipulated"; Petitioner's sentence constituted cruel and unusual punishment under the Eighth Amendment; Petitioner's historical prior felonies were improperly used in sentencing; Petitioner was denied a preliminary hearing; Petitioner received ineffective assistance of counsel; Petitioner did not waive counsel; the trial judge stated the wrong jurisdiction; Petitioner was subjected to pre-indictment delay; the prosecutor gave an improper opening statement; the trial court admitted inadmissible hearsay and prejudicial testimony; jurors of Petitioner's race were excluded from the jury pool; Petitioner's Fifth and Fourteenth Amendment rights were violated; and Petitioner was denied the right of an investigator or mitigation specialist. (*Id*.)

On June 5, 2019, Petitioner filed a motion to stay his first PCR proceedings while his direct appeal was pending. (*Id*. at 271-72) The state filed a response. (*Id*. at 274-76) On June 20, 2019, the superior court determined that Petitioner could suspend either his direct appeal or his first PCR proceedings, but not both. (*Id*. at 278) Because the court of appeals had suspended Petitioner's direct appeal pending Petitioner's first PCR proceedings, the superior court denied Petitioner's motion to stay his first PCR proceedings. (*Id*.)

On September 12, 2019, Petitioner filed a *pro se* motion to dismiss his first PCR proceedings without prejudice in order for his direct appeal to proceed. (*Id*. at 280-81) On September 17, 2019, the superior court dismissed Petitioner's first PCR proceedings "with leave to re-file at any time within 30 days following the issuance of the order and mandate on direct appeal from *State v. Palmer*, 1 CA-CR 18-0616, pursuant to Ariz. R. Crim. P. 32.4(a)(2)(D)." (*Id*. at 283)

---

n.1 (9th Cir. 2014) (per curiam).").

**D. Second PCR Proceedings**

On August 16, 2021, through appellate counsel, Petitioner filed a second PCR notice in the superior court and requested appointment of PCR counsel. (*Id.* at 285-88) On December 16, 2021, appointed PCR counsel Amy Bain ("PCR counsel") filed a Notice of Completion of Post-Conviction Review and requested an extension of time for Petitioner to file a *pro se* PCR petition. (Doc. 10-2 at 2-14) On December 20, 2021, the superior court granted Petitioner leave to file a *pro se* PCR petition by January 31, 2022. (*Id.* at 16-17)

On October 1, 2022, Petitioner filed a *pro se* PCR petition ("second PCR petition") in the superior court. (*Id.* at 19-52) Petitioner raised two issues for review: (1) that the state lacked subject matter jurisdiction over Petitioner's offenses committed against a federal agency, and (2) that prejudicial testimony affected the jury verdict and violated Petitioner's Sixth Amendment right to a fair and impartial trial. (*Id.* at 21-25) The state filed a response (*Id.* at 54-64), and Petitioner filed a reply (*Id.* at 66-77).

On February 3, 2023, the superior court found Petitioner's second PCR petition meritless and dismissed the PCR proceedings, stating:

> The Court of Appeals found no abuse of discretion on a single issue raised on appeal, the Trial Court's denial of [Petitioner's] motion for new trial, since [Petitioner] invited the error.

> [Petitioner] also fails to show that exclusive federal jurisdiction precluded the State of Arizona from charging him. The burden is on [Petitioner] to show exclusive federal jurisdiction in a state court prosecution, *State v. Dykes*, 114 Ariz. 592 (1977), and the three occurrences to show exclusive jurisdiction as outlined in *State v. Vaughn*, 163 Ariz. 200 (1989), do not apply here. His claim is also not supported by affidavits, records or other evidence and is therefore not colorable. There is simply no evidence to support a finding of exclusive federal jurisdiction or federal preemption. The fact that there are parallel penalties in federal law in no way proves federal preemption.

(*Id.* at 79-80)

The record does not reflect that Petitioner filed a motion for reconsideration or a petition for review in the court of appeals of the superior court's dismissal of his second PCR petition.[5]

---

[5] Further, the Maricopa County Superior Court electronic docket system does not reflect a motion for reconsideration or a petition for review: *see* https://perma.cc/UN3T-5JEU (last accessed July 10, 2024).

## II.      PETITIONER'S HABEAS CLAIMS

In his February 2, 2024, Petition, Petitioner raises two grounds for relief. (Doc. 1) In Ground One, Petitioner asserts that the state lacked subject matter jurisdiction to try and charge Petitioner; Petitioner asserts that the offenses leading to Petitioner's convictions were under exclusive federal jurisdiction. (*Id*. at 6) Petitioner argues that federal law preempted state law because the committed offenses were specifically described in federal law and were committed against a federal agency on federal property. (*Id*.) In Ground Two, Petitioner asserts that he was denied a fair and impartial jury trial because a state witness gave improper and prejudicial testimony. (*Id*. at 7) Petitioner argues that the state court "offered no curing instruction" and denied Petitioner's motion for a new trial due to prejudicial testimony, and that the prejudicial testimony influenced the jury's verdict. (*Id*.)

In their Limited Answer, Respondents assert that Grounds One and Two of the Petition are procedurally defaulted without excuse and request that the Petition be dismissed with prejudice. (Doc. 10 at 15-21) Respondents also request that a certificate of appealability be denied. (*Id*. at 21-22)

Petitioner did not file a reply, and the time to do so expired in late May 2024. (*See* Doc. 5 at 4)

## III.     PROCEDURAL DEFAULT

In their Limited Answer to the Petition, Respondents assert that Grounds One and Two of the Petition are procedurally defaulted without excuse. (Doc. 10 at 15-21) As discussed below, Respondents are correct.

### A. Legal Framework of Procedural Default

#### 1. Exhaustion

A state prisoner must properly exhaust all state court remedies before this Court may grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*,

526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.").

In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *See Swoopes*, 196 F.3d at 1010; *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994); *Castillo v. McFadden*, 399 F.3d 993, 998 & n.3 (9th Cir. 2005). Fair presentment of claims to the Arizona Court of Appeals requires a description of "both the operative facts and the federal legal theory on which [a] claim is based so that the state courts [could] have a 'fair opportunity' to apply controlling legal principles to the facts bearing upon [the] constitutional claim." *McFadden*, 399 F.3d at 999 (quoting *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003)).

It is not fair presentment, for example, that "all the facts necessary to support the federal claim were before the state courts … or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). It is also not enough to rely on a "general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Netherland*, 518 U.S. at 163; *see also McFadden*, 399 F.3d at 1002-03 (finding habeas petitioner did not give the state appellate court a fair opportunity to rule on a federal due process claim because "[e]xhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory," and the petitioner's claim in state court was a "conclusory, scattershot citation of federal constitutional provisions, divorced from any articulated federal legal theory").

Fair presentment is not achieved by raising the claim for "the first and only time in a procedural context in which its merits will not be considered," unless there are special

circumstances. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). As example, raising a claim for the first time in a discretionary petition for review to the Arizona Supreme Court or in a special action petition is not sufficient to achieve fair presentment. *See Casey v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004) ("Because we conclude that Casey raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them.") (footnote omitted).

### 2. *Procedural Default*

A corollary to the exhaustion requirement is the "procedural default doctrine." The procedural default doctrine limits a petitioner from proceeding in federal court where his claim is procedurally barred in state court and "has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004). If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991). There are two categories of procedural default.

First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. This is called an express procedural bar. An express procedural bar exists if the state court denies or dismisses a claim based on a procedural bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits"); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist when a state strictly or regularly follows its procedural rule).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. *See Harris*, 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal

claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing *Harris*, 489 U.S. at 264 n.10).

Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *Boerckel*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims). This is called an implied procedural bar. *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). This type of procedural default is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, Petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

In Arizona, claims not properly presented to the state courts are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. *See* former rules Ariz. R. Crim. P. 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.1(d)-(h),

32.9(c) (petition for review must be filed within thirty days of trial court's decision); *see also* current rules Ariz. R. Crim. P. 32.4(b)(3) (time bar); Ariz. R. Crim. P. 32.1(b) through (h) and 32.2(b) (permitting successive PCR proceedings on certain grounds and specified circumstances); 32.16(a)(1) (petition for review must be filed within thirty days of trial court's decision).[6]

Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not properly raised on direct appeal or in prior Rule 32 post-conviction proceedings. *See, e.g., Stewart*, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); *Smith v. Stewart*, 241 F.3d 1191, 1195 n.2 (9th Cir. 2000) ("We have held that Arizona's procedural default rule is regularly followed [or "adequate"] in several cases.") (citations omitted), *rev'd on other grounds, Stewart*, 536 U.S. 856; *State v. Mata*, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings). A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who completely fails to attempt to exhaust his state remedies. In Arizona, "ineffective assistance of counsel claims should be raised in post-conviction relief proceedings pursuant to rule 32, Arizona Rules of Criminal Procedure." *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001) (quoting *State v. Atwood*, 171 Ariz. 576 (1992)) (finding that failure to raise ineffective assistance of counsel claims on direct appeal did not bar federal habeas review).

/ / /

---

[6] Effective January 1, 2020, former Arizona Rules of Criminal Procedure ("Rules") 32 and 33 were abrogated, and new Rules 32 and 33 were adopted. *See* Arizona Supreme Court Order No. R-19-0012. As a general matter, the substance of former Rule 32 was divided among the two new rules based on whether a defendant was convicted at trial (new Rule 32) or had pled guilty or no contest (new Rule 33). *See id.*; Pet. to Amend (Jan. 10, 2019), at 4-5. New Rule 32 thus encompasses the rules applicable to a defendant's right to seek post-conviction relief when the defendant is convicted by trial. New Rule 32 and new Rule 33 apply to "all actions filed on or after January 1, 2020," and to "all other actions pending on January 1, 2020, except to the extent that the court in an affected action determines that applying the rule or amendment would be infeasible or work an injustice, in which event the former rule or procedure applies." Arizona Supreme Court Order No. R-19-0012.

### 3. Excuse for Procedural Default

The Court may review a procedurally defaulted claim if the petitioner can demonstrate either: (1) cause for the default and actual prejudice to excuse the default, or (2) a miscarriage of justice/actual innocence. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "Cause" is something that "cannot be fairly attributable" to a petitioner, and a petitioner must show that this "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citation and internal quotation marks omitted). To establish prejudice a "habeas petitioner must show 'not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." *Id.*

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original). To pass through the actual innocence/*Schlup* gateway, a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998); *Jaramillo*, 340 F.3d at 882-83. Significantly, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. *See also Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011); *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (explaining the significance of an "[u]nexplained delay in presenting new evidence"). A petitioner "must show that it is more likely than not that no reasonable juror would have

- 13 -

convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327)). Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).

### B. Exhaustion

#### 1. *Ground One*

In Ground One of the Petition, Petitioner asserts that the state lacked subject matter jurisdiction to try and charge; Petitioner asserts that the offenses leading to Petitioner's convictions were under exclusive federal jurisdiction. (Doc. 1 at 6) Petitioner argues that federal law preempted state law because the committed offenses were specifically described in federal law and were committed against a federal agency on federal property. (*Id.*)

Petitioner did not raise his Ground One claim in his direct appeal in the court of appeals. *Swoopes*, 196 F.3d at 1010 (requiring proper presentation of claim to the court of appeals through direct appeal or PCR process). Petitioner did not raise his Ground One claim until his first *pro se* PCR petition in the superior court. (Doc. 10-1 at 240-43) Petitioner did not file a petition for review in the court of appeals during his first PCR proceedings and instead successfully moved to dismiss his first PCR proceedings. In his second PCR petition in the superior court, Petitioner again raised a claim that the state lacked subject matter jurisdiction. (Doc. 10-2 at 21-24) Petitioner did not file a petition for review in the court of appeals regarding the superior court's dismissal of Petitioner's second PCR proceedings. Because Petitioner did not properly present his Ground One claim to the court of appeals, where he was required to raise such, Petitioner's Ground One claim is unexhausted. *Swoopes*, 196 F.3d at 1010; *O'Sullivan*, 526 U.S. at 843-45.

#### 2. *Ground Two*

In Ground Two of the Petition, Petitioner asserts that he was denied a fair and impartial jury trial because a state witness gave improper and prejudicial testimony. (Doc. 1 at 7) Petitioner argues that the state court "offered no curing instruction" and denied

- 14 -

Petitioner's motion for a new trial due to prejudicial testimony, and that the prejudicial testimony influenced the jury's verdict. (*Id*.)

In Petitioner's direct appeal in the court of appeals, Petitioner asserted that the trial court erred in denying Petitioner relief regarding witness testimony and finding that Petitioner had invited error. (Doc. 10-1 at 96) Petitioner did not argue a violation of his Sixth Amendment right to a fair and impartial jury due to prejudicial witness testimony. Petitioner did not fairly present the factual and federal constitutional basis for his Ground Two claim in his direct appeal. *McFadden*, 399 F.3d at 999. Petitioner did not raise his Ground One claim until his first PCR petition, in which Petitioner asserted that his Sixth Amendment right to a fair and impartial trial was violated due to prejudicial witness testimony. (Doc. 10-1 at 260-61) Petitioner did not file a petition for review in the court of appeals during his first PCR proceedings and instead successfully moved to dismiss his first PCR proceedings. Petitioner again raised his Ground Two claim in his second PCR petition. (Doc. 10-2 at 24) Petitioner did not file a petition for review in the court of appeals regarding the superior court's dismissal of Petitioner's second PCR proceedings.

Because Petitioner did not properly present his Ground Two claim to the court of appeals, where he was required to raise such, Petitioner's Ground Two claim is unexhausted. *Swoopes*, 196 F.3d at 1010; *O'Sullivan*, 526 U.S. at 843-45.

### C.  Grounds One and Two Are Procedurally Defaulted

As set forth above, Grounds One and Two of the Petition are unexhausted. Petitioner's Grounds One and Two claims are implicitly procedurally defaulted because it is too late under Arizona procedure for Petitioner to return to state court to properly exhaust his claims. *See* Ariz. R. Crim. P. 32.2(a)(3)[7] (defendant is precluded from relief pursuant

---

[7] Arizona Rule of Criminal Procedure 32.2(a)(3) provides that PCR relief is precluded on any claim "waived at trial or on appeal, or in any previous post-conviction proceeding, *except when the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant*." (emphasis supplied). The italicized language was added to the rules in January 2020, but even under the prior rule, Arizona courts limited an exception to preclusion only in circumstances where "an asserted claim is of sufficient constitutional magnitude." *Stewart v. Smith*, 202 Ariz. 446, 449 (2002). The Arizona Supreme Court has instructed that examples encompassed by this phrase include the right to counsel, the right to a jury trial, and the right to a twelve-person jury. *See id.* Petitioner's Grounds One and Two claims do not allege a violation of a

- 15 -

to Rule 32.1(a) that was waived on appeal or in previous PCR proceedings); Ariz. R. Crim. P. 32.4(b)(3)(A) (claims filed pursuant to Rule 32.1(a) must be filed within 90 days after oral pronouncement of sentence or 30 days after issuance of mandate in direct appeal, whichever is later); Ariz. R. Crim. P. 32.1(b)-(h), 32.2(b)(1), 32.4(b)(3)(B) (allowing defendant to assert claims identified in Rule 32.1(b) through (h) "within a reasonable time after discovering the basis for the claim"). Petitioner does not argue that he is able to return to state court to present his unexhausted Grounds One and Two claims, nor does the record support such an argument.

Accordingly, Grounds One and Two of the Petition are unexhausted and procedurally defaulted.

**D. Petitioner Fails to Establish Cause and Prejudice or Miscarriage of Justice/Actual Innocence to Excuse the Procedural Default of Grounds One and Two**

To excuse the procedural defaults of Grounds One and Two, Petitioner bears the burden of establishing either: (1) both cause and actual prejudice, or (2) a miscarriage of justice/actual innocence. *Coleman*, 501 U.S. at 750.

*1. Cause and Prejudice*

In his Petition, Petitioner does not assert that any "objective factor external to the defense" prevented him from asserting his Grounds One and Two claims in the state court of appeals. *Id*. at 753. Petitioner does not explain his failure to properly present his Grounds One and Two claims to the Arizona Court of Appeals. Moreover, Petitioner has not shown that he could not raise his Grounds One and Two claims during his direct appeal or during a petition for review of the superior court's dismissal of Petitioner's PCR proceedings. The factual and federal legal bases for Petitioner's Grounds One and Two claims, regarding trial court jurisdiction and trial testimony, existed prior to Petitioner's sentencing and prior to Petitioner's direct appeal. Petitioner had the opportunity to fairly present his claims in the state court of appeals but did not do so. Notably, in his direct appeal in the court of

---

constitutional right that can only be waived knowingly, voluntarily, or personally by a defendant.

appeals, Petitioner argued that the trial court erred in denying a motion for new trial and finding that Petitioner invited error regarding witness testimony, but Petitioner did not set out a claim that the prejudicial witness testimony violated Petitioner's Sixth Amendment right to a fair and impartial jury trial. (*See* Doc. 10-1 at 118-26) Petitioner also had the opportunity to raise his Grounds One and Two claims in his first and second PCR petitions in the superior court, yet Petitioner did not file a petition for review in the court of appeals regarding dismissal of his first or second PCR proceedings.

Even if Petitioner could establish cause to excuse his procedural default of Grounds One and Two, Petitioner has not shown that he suffered prejudice or that any alleged constitutional violation "worked to his *actual* and substantial disadvantage[.]" *Frady*, 456 U.S. at 170.

Accordingly, Petitioner has not established cause and prejudice to excuse his procedural default of Grounds One and Two of the Petition.

### 2.  *Miscarriage of Justice/Actual Innocence*

As set forth above, the miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson*, 541 F.3d at 937. To meet this exception to procedural default, Petitioner must "support his allegations of constitutional error with new reliable evidence[,]" *Schlup*, 513 U.S. at 324, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327).

To his Petition, Petitioner attached his opening brief in his direct appeal (Doc. 1-1); the court of appeals' memorandum decision affirming Petitioner's convictions and sentences (Doc. 1-2); Petitioner's petition for review to the Arizona Supreme Court in his direct appeal (Doc. 1-3 at 1-3); the Arizona Supreme Court's denial of Petitioner's petition for review (*Id*. at 14); Petitioner's second *pro se* PCR petition and attachments in the superior court (Docs. 1-4, 1-5); the superior court's February 3, 2023, order dismissing

Petitioner's PCR petition (Doc. 1-6); and the Arizona Supreme Court's December 12, 2018, order dismissing Petitioner's motion for a writ of mandamus (Doc. 1-7).

Petitioner does not allege, nor is it apparent from Petitioner's attachments to the Petition or the grounds in the Petition, that Petitioner is actually innocent. The state court orders and appellate and PCR briefing attached to the Petition are not "new reliable evidence" that would more likely than not prevent reasonable jurors from convicting Petitioner. *Schlup*, 513 U.S. at 324. Petitioner argues in the Petition that the trial court lacked jurisdiction over the charges of conviction and that prejudicial testimony affected the jury verdict, but these arguments are insufficient to establish actual innocence to excuse Petitioner's procedural default of his claims. *See Bousley*, 523 U.S. at 623-24 (petitioner must establish factual innocence, not mere legal insufficiency). Accordingly, Petitioner has not met his burden to establish actual innocence that would excuse his procedural default of Grounds One and Two of the Petition.

## IV.    CONCLUSION

For the reasons set forth above, Petitioner procedurally defaulted Grounds One and Two of the Petition without excuse. Therefore, it is recommended that the Petition be dismissed with prejudice and that the Clerk of Court be directed to terminate this matter.

Assuming the recommendations herein are followed in the District Judge's judgment, the undersigned recommends that a certificate of appealability be denied because dismissal is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Accordingly,

**IT IS RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Petition") (Doc. 1) be dismissed with prejudice and that the Clerk of Court be directed to terminate this matter.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 17th day of July, 2024.

_____
Honorable Deborah M. Fine
United States Magistrate Judge

- 19 -